[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter was first tried before Attorney Trial Referee Daniel Shepro. He rendered his report beyond the 120 day period and, upon objection by the defendant, the objection was sustained and the report itself was vacated. The matter was returned to the trial list and marked for trial on July 8, 2002, before the undersigned. At that time, the parties stipulated that this court could determine the issues raised based on the testimony and exhibits before Attorney Shepro and the briefs and reply briefs filed at that time by the parties. The parties did reserve the right to file supplemental briefs updating the law.
This is an appeal from probate. For purposes of simplicity, the court will refer to Gordon C. Andrews, the executor of the estate, as the plaintiff and one of the beneficiaries of the estate, John, Thomas Gorby, is referred to as the defendant. Some considerable historical background of this matter must be recited to understand the context in which the rather limited issue presented to the court is to be decided.
The decedent, John Stark Gorby, was a resident of Greenwich and was survived by one son, the defendant herein, and six grandchildren, all the offspring of the defendant. The plaintiff for several years prior to the decedent's death in 1989 was his next door neighbor. The plaintiff is an attorney admitted to practice both in New York and in Connecticut. Although his practice has been involved mainly in corporate law, he did CT Page 10642 work for three years beginning in 1975 as an associate in a New York law firm where he was heavily involved in estate matters.
His first legal service for the decedent was in 1986 when he assisted the decedent in the probate of his wife's estate. He charged $1,000 for that service. Subsequently, he prepared a new will for the decedent, which was executed on February 3, 1987. In that will, the defendant was named as executor and the Union Trust Company as Trustee. Subsequently, a First Codicil was prepared by the plaintiff dated October 13, 1987, which among other things designated him as the executor and trustee under the will. There was testimony that originally the plaintiff did not want to assume those roles, but he in fact did. The defendant was named substitute executor and Union Trust substitute trustee. For the first time, it was provided that the fiduciary fees would be in accordance with the Union Trust fee schedules for estates and trusts. That fee schedule was never fully explained to the decedent.
Again, on October 8, 1988, a Second Codicil to the decedent's will was prepared by the plaintiff and executed wherein the plaintiff was again named executor and trustee but this time with a power to appoint his successors. The Union Trust fee schedule remained.
In 1989, the decedent died and the plaintiff was duly appointed as executor. Apparently, during the probate proceedings, the plaintiff utilized his services as attorney for the estate. In late 1992, the plaintiff submitted his accounting to the Probate Court in Fairfield, and as a part of that, sought an executor's fee of $28,064 and a separate attorney's fee of $28,064. Apparently, before including the claim for attorney's fees, the plaintiff inquired of Attorney William Phillips of Greenwich as to the legitimacy of such fees and was advised that it was appropriate under Connecticut practice. He intentionally did not utilize the Union Trust Fee Schedule for Estates as he felt it was "inequitable" because the assets listed for tax purposes only would be transferred to inter vivos trusts wherein he, as trustee, would be compensated again. A fee based on that schedule would have been higher.
The defendant retained counsel who filed a petition on February 26, 1993, to disallow the fees, and a hearing was scheduled in the Probate Court. The defendant testified that he had had an earlier conversation with the plaintiff wherein he claims the plaintiff had estimated his fee for settling the decedent's estate at $3,000 and that was what now bothered him. The plaintiff had a different version of that conversation. He claims he told the defendant that he had charged the decedent $3,000 for the preparation of the will and eight inter vivos trusts and that he would charge the estate a reasonable fee for his services as executor. He never said he would also charge the estate a fee CT Page 10643 for legal services. The court finds that version of the conversation more reasonable.
Thereafter, the plaintiff amended his Affidavit of Estate closing to raise his fee as executor by $17,834 in accordance with the Union Trust schedule and hired Attorney William Phillips to assist him in achieving his higher fees. He gave as his reason for increasing his request for executor's fees the fact that as long as his fees were being challenged he should increase it in accord with the Codicil to raise the base point of his request. After hearing, the Probate Court awarded him $28,000 as an executor's fee and rejected in total his claim for attorney's fees because of his dual capacity. The defendant did not appeal from that decision, but the plaintiff did. In his appeal, the plaintiff sought the full executor's fee in excess of $45,000 and the attorney's fee of $28,064. That case was tried in the Superior Court before Levin, J., who basically reaffirmed the judgment of the Probate Court. The plaintiff appealed that decision to the Connecticut Appellate Court and thereafter the Connecticut Supreme Court assumed jurisdiction.
The Supreme Court, on May 14, 1996, reversed Judge Levin and remanded the case for a new trial. It decided three things. It found that Judge Levin gave deference to the finding of the Probate Court instead of conducting a trial de novo and making an independent determination of fees. It further ruled, on public policy grounds, that the bank fee schedule could not be used in an estate where the will preparer named himself as executor and put in the fee schedule and, finally, that in determining the reasonableness of attorney's fees for the estate, it was not necessary to present time records for that service.
On remand, the case was tried before the Honorable Milton Belinkie. After a full hearing, he awarded a total of $20,000 for combined executor's and attorney's fees and an additional specific award of attorney's fees in the amount of $5,000 for services before the Internal Revenue Service. That total of $25,000 for the plaintiff's services was obviously less than the $28,000 the Probate Court had initially awarded the plaintiff on May 4, 1993.
All during the initial proceeding before Judge Shannon in the Probate Court on the disallowance of fees, the trial before Judge Levin, the appeals to the Appellate and the Supreme Court and the retrial before Judge Belinkie, the plaintiff was represented by Attorney William Phillips. Those services were performed solely to increase the plaintiff's executor fees and to procure attorney fees for him. The effort was clearly unsuccessful. Attorney Phillips billed the plaintiff periodically and his total fee for the services previously mentioned was $25,000 in fees and $3,423.31 in disbursements. All of these fees and CT Page 10644 disbursements were paid by the plaintiff out of income from the estate. All of the fees charged to the defendant John Gorby by the law firm of Pullman Comley in defending the plaintiff's appeal were paid for personally by John Gorby.
Thereafter, the plaintiff filed an interim account dated February 9, 1998, for the period May 1, 1993, through December 31, 1997, in which he credited himself $25,000 in legal fees and $3,423.31 for costs associated with the legal fees. By document dated April 27, 1998, the Probate Court approved that accounting with the exception of the $25,000 for legal fees and $3,423.31 for costs associated with said fees, which it specifically disallowed.
This appeal followed which was apparently twice presented before an Attorney Trial Referee and now this court. The single issue before this court is whether the legal expenses and disbursements, all attributed to the services of Attorney William Phillips in an attempt to increase the executor's fee of the plaintiff and to procure an attorney's fee for him for services performed before the end of 1992, should be imposed on the estate or be paid by the plaintiff.
Before discussing that issue, there is a preliminary matter that must be determined. Shortly after the defendant through counsel filed his petition to disallow fees, the plaintiff hired Attorney William Phillips to represent his interest in that matter. He had known Mr. Phillips as a lawyer on other matters and had consulted him in this case on the subject of attorney's fees for the estate. On May 1, 1993, the plaintiff filed a new Affidavit of Closing Estate where, for the first time, he listed "Attorney's Fees — William A. Phillips (estimate) [$5,000.00]" right under the item in the amount of $17,834 for incremental fiduciary's fees. The attached Schedule of Proposed Distribution listed his executor's fee of $45,898, his attorney's fee of $28,064, and the attorney fee for Mr. Phillips of $5,000. The Probate Court disallowed the plaintiff's request for attorney's fees of $28,064. The plaintiff now claims that the approval of the Final Account and Affidavit of Closing, setting forth the $5,000 estimated fee for Mr. Phillips, was a final approval of Attorney Phillip's fees in representing the plaintiff and was binding on Probate Judge Caruso when he ultimately disallowed all of Mr. Phillip's services.
The defendant, on the other hand, argues that these fees were not approved by the Probate Court's orders in 1993. At that time, it was only an estimate. It basically set up a reserve of $5,000. There were no services listed, no description of the nature of the estimated services, no time records or other information provided to the Probate Court from which it could have approved or disapproved any particular fee request. CT Page 10645 That estimated fee of $5,000 plus the balance of Attorney Phillips' billing to the estate are exactly what was before Judge Caruso in 1998 when he disallowed them completely, and it is that total fee that is before this court now. The court agrees with the defendant that the fees for the particular services of Attorney Phillips had not been previously approved by the Probate Court before they were rejected by Judge Caruso in 1998.
Both parties filed extensive briefs before Attorney Trial Referee Shepro. The court has carefully reviewed those briefs. The defendant's brief and the plaintiff's reply brief spend most of their time distinguishing the cases cited by their opponents as inapplicable to this case. Both parties are generally correct in that position. Both parties cite the Uniform Probate Code and its Commentary even though they agree Connecticut has not adopted it. Connecticut simply has not previously decided a case that is closely in point to the issue in this case and therefore the court must go elsewhere.
In his briefs, the plaintiff relies almost exclusively on the California Supreme Court case of In Re Trynin, 782 P.2d 232 (1989). California at that time had a statute that allowed for fees to the attorney for an executor at a stated percentage of assets for ordinary services and any additional fees as the court may deem just and reasonable for extraordinary services. In Trynin, in an estate originally valued at $409,000, the co-administrators of their sister's estate hired a law firm as probate counsel. The estate was confronted with a contested claim for $738,000 or one half of the estate which was litigated through appeal and eventual settlement for $125,000. Thereafter, the estate's lawyers filed for extraordinary service fees and the co-administrators hired other counsel to oppose them. The court awarded these extraordinary fees, and the probate counsel then sought further extraordinary fees for their time and services in successfully pursuing their claim for extraordinary services. The court denied them those costs based on the ground that it had no authority to award compensation for services that only benefitted the attorneys for the estate and did not enhance the size of the estate available for distribution.
The question presented on appeal was "Do extraordinary fees so allowed include compensation for time reasonably spent to establish and defend the attorney's own fee claim." The California Supreme Court said yes, but principally on the basis of its statutory scheme, which Connecticut does not have. The California Supreme Court's reasoning was that a contrary rule would ultimately cause lawyers to be reluctant to perform such services if the compensation awarded would be diluted by expenses defending against unjustified objections to their fees. Even that ruling relied on an unjustified objection to the fees. The Court went on to say CT Page 10646 that "While fee litigation confers no immediate or direct benefit to the estate, it becomes a necessary incident to the attorney's work for the estate and so compensable when unjustified challenges are raised to a fee claim." Obviously, in Trynin, because the original extraordinary fees were approved, it was easy to find the objection to be unjustified. However, the Court went on to say, "This does not mean that an additional award for fee related services is invariably required." In cases where the Court concludes that the fees already approved for ordinary and extraordinary services are adequate given the value of the estate to fully compensate the lawyers, then denial of fee related services is not an abuse of discretion.
Of all the authority cited in the plaintiff's brief, this case comes closest to supporting his claim. What distinguishes it from this case is the fact that Connecticut has no similar statutory provisions for attorneys' fees. Further, this court has not yet determined the issue as to whether the original petition to disallow fees was justified or unjustified.
Let us look at that issue for a moment. The plaintiff drew the first codicil that named him for the first time as executor and trustee of the decedent's estate. The will allowed him to use the Union Trust fee schedule, but he chose not to use it because he believed it would be inequitable as some of the estate's assets listed for tax purposes only would be immediately transferred to trusts of which he was the trustee and would again earn a fee. He had told the defendant that he would charge a reasonable fee for his services as executor. He established that fee at $28,064. He had never discussed with the defendant a separate fee as the estate's attorney. After he sought advice as to the attorney's fees and was apparently told it was permissible under Connecticut practice to include them on a dollar for dollar basis, he therefore requested an attorney's fee that duplicated to the dollar the executor's fee in the amount of $28,064.
When those fees were challenged, the plaintiff then increased his request for executor's fees to $45,898 in accordance with the Union Trust schedule and has throughout all the proceedings below asked for the larger executor's fee in what he describes as good faith, despite the fact he had earlier described that very fee as inequitable to the estate. The rest is history. Probate Judge John Shannon awarded him $28,000 as an executor's fee and zero dollars for attorney's fees. The plaintiff appealed and the appeal was heard before Judge Bruce Levin. Judge Levin found in the same amounts as Judge Shannon but was reversed on other technical grounds. After an appeal to the Connecticut Supreme Court, which has been discussed earlier, that matter was remanded and heard fully before Judge Trial Referee Milton J. Belinkie. Judge Belinkie CT Page 10647 awarded the plaintiff a combined figure of $20,000 for executor's and attorney's fees and an additional sum of $5,000 for attorney's fees before the Internal Revenue Service.
What is clear is that the original request for executor's and attorney's fees for the plaintiff totaled $56,128. When it was contested, he raised it to $73,962 and the final adjudication of what he was entitled to amounted to $25,000, $3,000 less than Judge Shannon originally awarded him. That challenge saved the estate $48,962. One could hardly describe the defendant's objection to the fees based on these facts as "unjustified", and the court does not find them unjustified.
The defendant's position generally is that the test for the allowableness of items of administrative expenses is whether such expenses are equitably chargeable to the estate and were properly and reasonably incurred for the benefit of the estate. Brown v. Ecclestein,53 Conn. 110 (1885). He simply argues that these litigation expenses incurred by the plaintiff in order to increase his fees were in his interest only and if successful they would decrease the size of the estate and, therefore, were not for the benefit of the estate. He cites no other Connecticut authority that is helpful. He distinguishes Trynin, supra, and cites as his primary authority In Re Inlow, 737 N.E.2d 240
(Ind. 2000), Estate of Larson, 694 P.2d 1091 (1985) and In Re SloanEstate, 538 N.W.2d 47 (1995).
The court will now discuss In Re Inlow, an Indiana Court of Appeals case. In that case the decedent died intestate leaving an estate of between 180 and 185 million dollars. Indiana also had a statutory provision that simply said that the attorney for the estate should be awarded just and reasonable compensation. Without a statute, the court believes Connecticut has adopted such a standard. The facts in Inlow
because of the size of the estate are obviously much more complicated than in Trynin, and will not be utilized other than to explain any legal conclusions. The personal representation of the estate hired the law firm of Henderson Daily as probate counsel. The size and complexity of the estate were enormous and there was a requirement to investigate a wrongful death claim as the decedent died in a helicopter crash. At a point, Henderson Daily estimated their total fee at $1,900,000 and because 80 percent of the work had been accomplished asked for an interim payment of $1,520,000. The decedent's children and heirs from his first marriage objected calling the fees unconscionable, outrageous and unreasonable. After a hearing, the court awarded the sum of $750,000 as interim attorney's fees, including fees for services in support of its fee request. The heirs appealed that order. CT Page 10648
The threshold question raised by the Inlow children was whether the trial court erred in awarding Henderson Daily fees for the time it devoted to preparing and defending the reasonableness of its fee petition. The court went on to describe the factors that go into deciding what a reasonable fee is, which is not important to the issue in this case. The court then stated "This case presents an issue of first impression in Indiana: whether preparing and defending the reasonableness of a fee petition qualify as "services for the estate under section.
Although Connecticut does not have a similar statutory provision for a reasonable attorney fee, our practice here clearly would encompass such a fee. Also, this court does not believe there is any distinction to be drawn from the fact that in this case outside counsel has been brought in to defend the reasonableness of the fees.
The Indiana Court of Appeals acknowledged that there is case law supporting both sides of this issue. It, however, clearly adopted the position urged by the defendant herein. In discussing the case of Estateof Larson, supra, it cited its reasoning that " . . . in defending a challenge to a requested attorney fee in a final report in probate, the attorney is the real party in interest and, thus, the time spent and fees incurred in defending the objections served only the attorney's interest and were of no benefit to the estate. . . . Indeed, under the trial court's ruling, the value of the estate was reduced in direct proportion to the amount the court increased the attorney fee."
In In re Sloane Estate, supra, the court stated that " . . . legal services rendered in behalf of the estate are compensable where the services confer a benefit on the estate by either increasing or preserving the estate's assets." In denying the so-called fees on fees request, the court in Sloane stated, " . . . the ordinary fees and costs incurred in establishing and defending a fee petition are inherent in the normal course of doing business as an attorney and the estate may not be diminished to pay those fees and costs."
The Indiana Court went on to distinguish In re Trynin, supra, as has been previously discussed. After reviewing all the authority the Indiana Court clearly came down on the side of disallowing a charge against the estate for preparing a fees request or defending the reasonableness of a fee petition. The Court went on to say: "In the case of a meritorious challenge to a fee petition, defending its reasonableness cannot seriously be considered a service `for the estate' especially if the challenge results in a reduction of the proposed fees." In citing another statute, Indiana Code Section 34-52-1-1(b), the Court stated there would be an exception to that rule where the challenge was frivolous, unreasonable or groundless. Connecticut does not have a similar statutory CT Page 10649 provision but to the extent that our common law might adopt such a principle, this court finds that the motion for disallowance here was not frivolous, unreasonable or groundless.
This court concludes that the reasoning of the Indiana, Washington and Michigan courts is clearly superior to that of California in In reTrynin and specifically adopts their holdings. This court further finds that such reasoning is equally persuasive in matters dealing with executor's fees as well as attorney's fees. Each is being pressed for the same reason, to increase the fees of the executor or attorney for their services at the expense of the estate.
The facts in this case make the application of those cases even more compelling. Here the plaintiff executor and attorney promised the defendant he would charge a reasonable executor's fee. He never suggested or explained an attorney's fee. He apparently did not even know of its legitimacy until he sought the advice of counsel. Once he heard he could charge it, he did. There is no way that can be considered as bestowing a benefit on the estate. When challenged, he increased his request for the executor's fees by over $17,000 even though in his own words he had previously described that higher fee as "inequitable" to the estate.
The Probate Court approved his original request for an executor's fee in the amount of $28,000 and denied in its entirety all of the fees requested for attorney's fees. He was the only one who appealed from that ruling. The defendant did not appeal from the original award of the executor's fee. All of the subsequent litigation was at the plaintiff's behest, was for his sole benefit, and he was not successful. After the final hearing, he was awarded a total of $25,000 for combined executor's and attorney's fees, $3,000 less than he was originally awarded by Judge Shannon back in 1993; $31,128 less than he had originally asked for and $48,962 less than his amended request. He has lost at every level.
The defendant on the other hand had to hire outside counsel to challenge those fees. The defendant has been the primary income beneficiary of the estate since its inception. Yet he has had to pay out of his own pocket legal fees for successfully defending against those excessive fees that would have done nothing but line the plaintiff's pockets. And now the plaintiff having unsuccessfully pursued his fee requests wants the estate and indirectly the defendant herein to pay for his own legal fees. The Probate Court said "no" and this court says "no."
Although it may be true that the plaintiff has already paid the fees and disbursements of Attorney Phillips out of the estate's assets, those fees and disbursements are disallowed and may not be charged as an CT Page 10650 expense to the estate and the plaintiff is ordered to restore them to the estate.
 ___________________ GORMLEY, J.